# Syllabus

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

SAUGATUCK DUNES COASTAL ALLIANCE v SAUGATUCK TOWNSHIP

Docket Nos. 160358 and 160359. Argued on application for leave to appeal October 7, 2021. Decided July 22, 2022.

Appellant, Saugatuck Dunes Coastal Alliance, brought two separate actions in the Allegan Circuit Court against Saugatuck Township, the Saugatuck Township Zoning Board of Appeals (the ZBA), and North Shores of Saugatuck, LLC, appealing the ZBA's decision that appellant lacked standing to appeal the zoning decision of the Saugatuck Township Planning Commission (the Commission) concerning a proposed residential site condominium project on property owned by North Shores. North Shores applied for approval of a planned unit development that would include condominium units with a private marina, which required special use approval. The Commission granted conditional, preliminary approval, and appellant appealed the approval to the ZBA, invoking Saugatuck Township Ordinance, § 40-72 and the Michigan Zoning Enabling Act (the MZEA), MCL 125.3101 *et seq.* Appellant attached affidavits from some of its members to establish standing to appeal under MCL 125.3604(1) of the MZEA, claiming that the members would be uniquely harmed by the approved development. On October 11, 2017, the ZBA held a public hearing and decided that appellant lacked standing to appeal the Commission's decision. The ZBA framed the allegations raised by appellant's members as complaints that might be true of any proposed development in the area and found that appellant had not demonstrated any special damages—environmental, economic, or otherwise—that would be different from those sustained by the general public. Appellant appealed the ZBA's decision in the Allegan Circuit Court and added two original claims: one for declaratory and injunctive relief and another seeking abatement of an alleged nuisance. While the first appeal was pending, North Shores obtained various state and federal approvals and applied to the Commission for final approval of the planned unit development, which included the marina. The Commission granted final approval, and appellant appealed the decision to the ZBA. After another public hearing on April 9, 2018, the ZBA adopted a resolution that largely mirrored the prior resolution and denied standing to appellant. Appellant also appealed this decision in the Allegan Circuit Court. On February 6, 2018, the circuit court, Wesley J. Nykamp, J., affirmed the ZBA's October 11, 2017 decision and dismissed the appeal; the court did not, however, address the original claims that appellant had raised. On November 14, 2018, the circuit court, Roberts A. Kengis, J., affirmed the ZBA's April 9, 2018 decision and dismissed the appeal. Appellant appealed both circuit court decisions in the Court of Appeals, and the Court of Appeals consolidated the cases. After determining that it had jurisdiction, the Court of Appeals, GADOLA, P.J., and MARKEY and RONAYNE KRAUSE, JJ., affirmed the circuit court's

and the ZBA's decisions in an unpublished per curiam opinion issued August 29, 2019 (Docket Nos. 342588 and 346677), holding that appellant lacked standing to appeal because appellant was not a "party aggrieved" by the approvals. The panel relied on *Olsen v Chikaming Twp*, 325 Mich App 170 (2018), and MCL 125.3605. However, the panel remanded Docket No. 342588 to the circuit court for plenary consideration of the original claims that appellant had raised in that case. Appellant sought leave to appeal in the Supreme Court, and the Supreme Court ordered oral argument on the application, directing the parties to address three issues: (1) whether the "party aggrieved" standard of MCL 125.3605 requires a party to show some special damages not common to other property owners similarly situated; (2) whether the meaning of "person aggrieved" in MCL 125.3604(1) differs from that of "party aggrieved" in MCL 125.3605 and, if so, which standard applies to this case; and (3) whether the Court of Appeals erred by affirming the circuit court's dismissal of appellant's appeals. 505 Mich 1056 (2020).

In an opinion by Justice WELCH, joined by Chief Justice MCCORMACK and Justices BERNSTEIN, CLEMENT, and CAVANAGH, the Supreme Court, in lieu of granting leave to appeal, *held*:

The MZEA does not require an appealing party to own real property and to demonstrate special damages only by comparison to similarly situated real-property owners; *Olsen*, 325 Mich App 170, *Joseph v Grand Blanc Twp*, 5 Mich App 566 (1967), and related Court of Appeals decisions were overruled to the limited extent that they required (1) real-property ownership as a prerequisite to being "aggrieved" by a zoning decision under the MZEA and (2) special damages to be shown only by comparison to similarly situated real-property owners. Additionally, "aggrieved" has the same meaning in MCL 125.3604(1) and MCL 125.3605, and appellant in this case met the definition of a "person," MCL 125.3604(1), and a "party," MCL 125.3605.

1. MCL 125.3604(1) provides, in relevant part, that an appeal to the ZBA may be taken by a person aggrieved or by an officer, department, board, or bureau of this state or the local unit of government. MCL 125.3605 provides, in pertinent part, that a party aggrieved by the decision of the ZBA may appeal to the circuit court for the county in which the property is located as provided under MCL 125.3606. MCL 125.3606(1) provides, in pertinent part, that any party aggrieved by a decision of the ZBA may appeal to the circuit court for the county in which the property is located. Zoning statutes in Michigan have a long history of making the ability to appeal an administrative zoning decision contingent on establishing that one was "aggrieved" by the decision, but the Legislature has never defined what it means to be aggrieved by a zoning decision. *Joseph*, an original action challenging a rezoning ordinance, had been repeatedly cited for the proposition that to be "aggrieved" by a zoning decision for purposes of an appeal, a comparison to similarly situated property owners was required, which implicitly required the complaining party to be a property owner, but there was no discussion about why property ownership was itself key to one's ability to contest a zoning decision or how that requirement could be derived from any of Michigan's zoning statutes that were then in effect. In *Unger*, the Court of Appeals applied the *Joseph* property-ownership formulation in the context of zoning appeals. In this case, the Court of Appeals relied on *Olsen*, which reaffirmed *Joseph*'s primary holding without analyzing the procedural differences or the minimal source material relied on in *Joseph*. Over time, the term "aggrieved" in the MZEA became inappropriately intertwined with real-property ownership to a point where judicial decisions began to suggest that only real-property owners had the ability to appeal a zoning decision. But there is no indication in the text of the MZEA that the Legislature intended to grant the right to appellate review of zoning decisions only to real-property owners.

Neither the MZEA nor any of Michigan's previous zoning statutes explicitly require one to own real property in order to be "aggrieved" by local land-use decisions or to prove "aggrieved" status by comparison to other property owners who are similarly situated. By requiring one to be a "party aggrieved" by a zoning decision under MCL 125.3605 and MCL 125.3606, the Legislature implicitly rejected the idea that standing can be based on mere proximity to a development. The Legislature omitted mention of ownership or occupancy status when describing the class of individuals or entities that are entitled to appeal a decision under MCL 125.3605 or MCL 125.3606. Instead, the Legislature used the broader phrase "party aggrieved" without mandating that the party own any property within the relevant jurisdiction or that the required harm be shown by comparison to other property owners. That choice of words established a class of potential appellants broader than real-property owners, with the focus being on whether the decision at issue "aggrieved" the complaining party.

2. To be a "party aggrieved" under MCL 125.3605 and MCL 125.3606, the appellant must meet three criteria: (1) the appellant must have participated in the challenged proceedings by taking a position on the contested decision, such as through a letter or oral public comment; (2) the appellant must claim some legally protected interest or protected personal, pecuniary, or property right that is likely to be affected by the challenged decision; and (3) the appellant must provide some evidence of special damages arising from the challenged decision in the form of an actual or likely injury to or burden on their asserted interest or right that is different in kind or more significant in degree than the effects on others in the local community. The phrase "others in the local community" refers to persons or entities in the community who suffer no injury or whose injury is merely an incidental inconvenience and excludes those who stand to suffer damage or injury to their protected interest or real property that derogates from their reasonable use and enjoyment of it. Factors that can be relevant to this final element of special damages include but are not limited to: (1) the type and scope of the change or activity proposed, approved, or denied; (2) the nature and importance of the protected right or interest asserted; (3) the immediacy and degree of the alleged injury or burden and its connection to the challenged decision as compared to others in the local community; and (4) if the complaining party is a real-property owner or lessee, the proximity of the property to the site of the proposed development or approval and the nature and degree of the alleged effect on that real property.

3. Several well-established principles that are relevant to the standing analysis were reaffirmed. Under the current MZEA, mere ownership of real property that is adjacent to a proposed development or that is entitled to statutory notice, without a showing of special damages, is not enough to show that a party is aggrieved. Additionally, generalized concerns about traffic congestion, economic harms, aesthetic harms, environmental harms, and the like are not sufficient to establish that one has been aggrieved by a zoning decision; however, a specific change or exception to local zoning restrictions might burden certain properties or individuals' rights more heavily than others. Further, unlike in an original lawsuit, a circuit court sits as an appellate body with a closed record when reviewing an appeal brought under MCL 125.3605 and MCL 125.3606; accordingly, if the circuit court determines that the record is inadequate to make the review that MCL 125.3606 requires for purposes of analyzing standing under MCL 125.3605 and MCL 125.3606, then the court shall order further proceedings on conditions that the court considers proper, which may include a remand to the relevant planning or zoning body whose decision is being contested with instructions as to what is expected by the circuit court.

4. The term "aggrieved" must be given the same meaning in both MCL 125.3604(1) and MCL 125.3605. The Legislature has provided no indication that the term "aggrieved" was intended to have different meanings in these closely related statutes. Additionally, appellant in this matter met the definition of a "person," MCL 125.3604(1), and a "party," MCL 125.3605. To determine whether the ZBA's standing decision was correct in this case, on remand the circuit court was directed to first determine whether appellant was aggrieved by the Commission's decision for the purpose of appealing to the ZBA under MCL 125.3604, which will inform the subsequent analysis of whether appellant was aggrieved by the ZBA's standing decision for the purpose of appealing in the circuit court under MCL 125.3605 and MCL 125.3606.

*Olsen*, *Joseph*, and related Court of Appeals decisions are overruled to the limited extent that they (1) require real-property ownership as a prerequisite to being "aggrieved" by a zoning decision under the MZEA and (2) require special damages to be shown only by comparison to similarly situated real-property owners; Part IV of the Court of Appeals opinion is vacated; Allegan Circuit Court's judgment regarding standing is vacated; and the cases are remanded to the Allegan Circuit Court for reconsideration of appellant's arguments regarding standing under MCL 125.3604(1) and MCL 125.3605, for consideration of appellant's original causes of action as directed by Part V of the Court of Appeals opinion, and for other proceedings as may be necessary or appropriate under MCL 125.3606.

Justice VIVIANO, joined by Justice ZAHRA, dissenting, would have held that to appeal the decision of the ZBA, plaintiff needed to show that its members would suffer some harms that were different from the harms suffered by similarly situated community members and that the Court of Appeals correctly determined that plaintiff had not made that showing because the harms alleged were either common to other similarly situated community members or were not damages as a result of the decision of the Commission or the ZBA. The Court of Appeals in this case correctly understood that whether a party has standing is a distinct inquiry from whether a party is "aggrieved" for purposes of the MZEA. And because there has been long and consistent interpretation of the phrase "party aggrieved" in Michigan zoning jurisprudence, it was not only proper, but necessary, for the Court of Appeals to consider that caselaw in determining whether plaintiff was a "party aggrieved" under MCL 125.3605. The Court of Appeals has never held that a person must be a property owner to appeal a zoning decision or that, to determine aggrieved status, the appellant must be compared to property owners; rather, the Court of Appeals merely recognized that the parties challenging the ZBA decisions in *Joseph* and its progeny were, in fact, property owners. With regard to interpreting the term "party aggrieved," the statutory history of the MZEA and the acts that it replaced demonstrated that the Legislature intended to return to a narrower "aggrieved" standard in place of the relaxed "interest affected" standard that it had adopted in 1979. And because the phrase "party aggrieved" had received past judicial interpretation, the requirement that a party show that he or she suffered some special damages not common to other property owners similarly situated would have been part of the Legislature's understanding of the phrase "party aggrieved" when it enacted the MZEA. The majority abandoned the interpretation of "aggrieved" that stood for decades, including at the time the Legislature adopted the MZEA, and the majority's expansive new definition of "party aggrieved" is contrary to the intent of the Legislature, confusing, and unnecessary to resolve this case. This new definition will have far-ranging and destabilizing effects on Michigan zoning law, which had been settled and had operated well for over a century.

# OPINION

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

FILED July 22, 2022

## STATE OF MICHIGAN

## SUPREME COURT

SAUGATUCK DUNES COASTAL
ALLIANCE,

        Plaintiff-Appellant,

v

Nos. 160358-9

SAUGATUCK TOWNSHIP,
SAUGATUCK TOWNSHIP ZONING
BOARD OF APPEALS, and NORTH
SHORES OF SAUGATUCK, LLC,

        Defendants-Appellees.

_____

BEFORE THE ENTIRE BENCH

WELCH, J.

This case requires us to determine what it means to be aggrieved for purposes of appealing certain land-use decisions to a zoning board of appeals, MCL 125.3604(1), and appealing a zoning board of appeals' decision to the circuit court, MCL 125.3605.

Appellant, Saugatuck Dunes Coastal Alliance,[1] argues that the lower courts erred when they found that the Michigan Zoning Enabling Act (MZEA), MCL 125.3101 *et seq.*, denied it standing to appeal the decisions of the Saugatuck Township Planning Commission (Commission). Prior Court of Appeals decisions relied on by the Saugatuck Township Zoning Board of Appeals (ZBA) and lower courts have repeatedly and erroneously read the term "party aggrieved" too narrowly. Specifically, we hold that the MZEA does not require an appealing party to own real property and to demonstrate special damages only by comparison to other real-property owners similarly situated. Cf. *Olsen v Chikaming Twp*, 325 Mich App 170; 924 NW2d 889 (2018), lv den sub nom *Olsen v Jude & Reed, LLC*, 503 Mich 1018 (2019); *Joseph v Grand Blanc Twp*, 5 Mich App 566; 147 NW2d 458 (1967). We overrule *Olsen*, *Joseph*, and related Court of Appeals decisions to the *limited extent* that they require (1) real-property ownership as a prerequisite to being "aggrieved" by a zoning decision under the MZEA and (2) special damages to be shown only by comparison to other real-property owners similarly situated.

As explained later in this opinion, to be a "party aggrieved" under MCL 125.3605 and MCL 125.3606, the appellant must meet three criteria. First, the appellant must have participated in the challenged proceedings by taking a position on the contested proposal or decision. Second, the appellant must claim some protected interest or protected personal, pecuniary, or property right that will be or is likely to be affected by the

---

[1] Appellant is a nonprofit organization based in Saugatuck, Michigan. Its membership consists of a coalition of individuals and organizations, and appellant's stated mission is protecting and preserving the natural geography, historical heritage, and rural character of the Saugatuck Dunes coastal region in the Kalamazoo River Watershed.

challenged decision. Third, the appellant must provide some evidence of special damages arising from the challenged decision in the form of an actual or likely injury to or burden on their asserted interest or right that is different in kind or more significant in degree than the effects on others in the local community. We agree with the parties' arguments that "aggrieved" has the same meaning in MCL 125.3604(1) and MCL 125.3605. We also agree with the parties that appellant in this matter meets the definition of a "person," MCL 125.3604(1), and a "party," MCL 125.3605.

It is not clear whether the lower courts would have reached the same result as to appellant's standing in the absence of errors in then-binding precedent. Accordingly, we vacate Part IV of the Court of Appeals opinion and the Allegan Circuit Court's judgments as to standing and remand both cases to the circuit court for reconsideration of appellant's standing arguments under MCL 125.3604(1) and MCL 125.3605. On remand, the circuit court shall also address appellant's original causes of action as directed by Part V of the Court of Appeals opinion and conduct such other proceedings as may be necessary or appropriate under MCL 125.3606.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At issue are two separate zoning decisions the Commission made concerning a proposed residential site condominium project that includes a marina and boat basin with boat slips[2] on property owned by North Shores of Saugatuck, LLC (North Shores). North

---

[2] Appellant contends that the proposed marina would be, in fact, an artificial channel, violating Saugatuck Township's zoning ordinance. We take no position on the merits of this contention because its resolution is premature before it is determined whether appellant is "aggrieved" under the MZEA.

3

Shores owns approximately 300 acres of land with frontage on the north shore of the Kalamazoo River and on Lake Michigan. The proposed development that is the subject of the appeal occupies a residentially zoned subset of the larger parcel that North Shores refers to as the "Harbor Cluster."

North Shores applied for approval of a planned unit development.[3] The planned unit development would include 23 residential site condominium units[4] surrounding the boat basin, a community building, a private marina with 33 "dockominium" boat slip condominium units, and open spaces designated as general common elements. The marina was proposed as a supplement to North Shores' application and required special use approval.

_____

[3] See MCL 125.3503(1) ("As used in this section, 'planned unit development' includes such terms as cluster zoning, planned development, community unit plan, and planned residential development and other terminology denoting zoning requirements designed to accomplish the objectives of the zoning ordinance through a land development project review process based on the application of site planning criteria to achieve integration of the proposed land development project with the characteristics of the project area.").

[4] "Site condominium" is not a term defined under the MZEA, but it has been described as " 'a method of building "subdivisions" without officially subdividing land.' . . . The single family residence type of site condo can resemble either a traditional subdivision home or a detached condominium. The difference depends on what use the owner has of the immediate lot on which the building sits." Comment, *Site Condominiums: Fast Homes, For A Price*, 6 Cooley L Rev 511, 512 (1989), quoting Wynant & Williams, *Site Condos: A Quiet Revolution*, 1988 Plan & Zoning News 5, 5 (1988). A site condominium unit is "that portion of the condominium project designed and intended for separate ownership and use, as described in the master deed, regardless of whether it is intended for residential, office, industrial, business, recreational, use as a time-share unit, or any other type of use." MCL 559.104(3).

A. PLANNING COMMISSION AND ZONING BOARD OF APPEALS DECISIONS

The Commission granted conditional, preliminary approval of the proposed planned unit development and the special use approval for the marina on April 26, 2017. Invoking Saugatuck Township Ordinance, § 40-72 and the MZEA, appellant appealed these preliminary approvals to the ZBA in June 2017 and provided supplemental arguments in September 2017. With the supplemental arguments, appellant attached affidavits from some of its members to establish standing to appeal under MCL 125.3604(1) given that North Shores had challenged appellant's standing. The affidavits alleged ways in which the members claimed they would be uniquely harmed by the approved development.[5]

At a hearing on October 11, 2017, the ZBA heard comments from the public, including from members of appellant and from appellant's counsel. The ZBA adopted a resolution that relied on *Unger v Forest Home Twp*, 65 Mich App 614; 237 NW2d 582 (1976), and decided that appellant lacked standing to appeal the Commission's decision. The ZBA framed the allegations raised by appellant's members as complaints that might be true of any proposed development in the area and found that appellant had not demonstrated any special damages—environmental, economic, or otherwise—that would be different from those sustained by the general public as a result of the proposed

---

[5] The members included Dave Engel (a local resident and owner and operator of a salmon and trout charter boat who alleged injury to his business), Liz Engel (a local resident and Realtor selling homes in the area who alleged injury to her business), Patricia Birkholz (a local resident and former Michigan state senator who alleged injury to her legacy and the natural area that bears her name), Mike Johnson (a local resident and owner of the Coral Gables Complex in Saugatuck who alleged injury to his businesses), Kathi Bily-Wallace (a local resident and neighboring property owner who alleged injury to property and riparian rights), and Chris Deam (an owner of a seasonal cottage and land located near the Old Saugatuck Lighthouse who alleged injury to his property and riparian rights).

development. Appellant appealed the ZBA's decision in the Allegan Circuit Court and added two original claims: one for declaratory and injunctive relief and another seeking abatement of an alleged nuisance.

While the first appeal was pending, North Shores obtained various state and federal approvals and applied to the Commission for final approval of the planned unit development, which included the marina. The Commission granted final approval on October 23, 2017. Appellant appealed this decision to the ZBA in a written statement dated December 7, 2017. Prior to the public hearing scheduled for April 9, 2018, appellant again submitted a letter providing a detailed basis for its standing and the alleged merits of its appeal. The letter raised arguments regarding the depositing of dredge spoils within 300 feet of some members' property and the potential adverse effects on sturgeon restoration, local hydrology, and the nearby Patricia Birkholz Natural Area. Appellant requested that the ZBA revisit and reverse its prior decision that appellant did not have standing to appeal. On April 9, 2018, after another public hearing, the ZBA adopted a resolution that largely mirrored the prior resolution and denied standing to appellant. Appellant also appealed this decision in the Allegan Circuit Court.

## B. CIRCUIT COURT DECISIONS

The appeal from the October 11, 2017 ZBA decision was assigned Case No. 17-058936-AA. In that case, the circuit court incorporated by reference a prior circuit court opinion addressing appellant's standing to appeal a different land-use decision involving different portions of property that North Shores now owns. Relying on this prior opinion and its analysis of *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349; 792 NW2d

6

686 (2010), the circuit court affirmed the ZBA's decision and dismissed the appeal on February 6, 2018. The circuit court did not, however, address the original claims that appellant raised in this case. The appeal from the April 9, 2018 ZBA decision was assigned Case No. 18-059598-AA. On November 14, 2018, relying on the oral statements made on the record, the circuit court affirmed the ZBA's decision and dismissed the appeal.

## C. COURT OF APPEALS DECISION

Appellant appealed both circuit court decisions in the Court of Appeals, and the Court of Appeals consolidated the cases.[6] *Saugatuck Dunes Coastal Alliance v Saugatuck Twp*, unpublished order of the Court of Appeals, entered January 22, 2019 (Docket Nos. 342588, 346677, and 346679).[7] After determining that it had jurisdiction, the Court of Appeals affirmed the circuit court's and ZBA's decisions holding that appellant lacked standing to appeal because appellant was not a "party aggrieved" by the approvals. *Saugatuck Dunes Coastal Alliance v Saugatuck Twp*, unpublished per curiam opinion of the Court of Appeals, issued August 29, 2019 (Docket Nos. 342588 and 346677), pp 3-5.

The panel relied on *Olsen*, 325 Mich App 170, and MCL 125.3605. It observed that in *Olsen*, the Court had explained that "the term 'standing' generally refers to the right of a plaintiff initially to invoke the power of a trial court to adjudicate a claimed injury."

---

[6] The appeal from Case No. 17-058936-AA was assigned Court of Appeals Docket No. 342588, and the appeal from Case No. 18-059598-AA was assigned Court of Appeals Docket No. 346677.

[7] The Court of Appeals consolidated the appeals in Docket Nos. 342588 and 346677 but denied the portion of appellant's motion requesting consolidation of Docket Nos. 342588 and 346677 with Docket No. 346679 because the application for leave to appeal in Docket No. 346679 had not yet been decided.

7

*Olsen*, 325 Mich App at 180. But under MCL 125.3605, " 'a party seeking relief from a decision of a ZBA is not required to demonstrate "standing" but instead must demonstrate to the circuit court acting in an appellate context that he or she is an "aggrieved" party.' " *Saugatuck Dunes Coastal Alliance*, unpub op at 4, quoting *Olsen*, 325 Mich App at 180-181. The panel noted that both common-law standing and demonstrating aggrieved-party status require a party to " 'establish that they have special damages different from those of others within the community.' " *Saugatuck Dunes Coastal Alliance*, unpub op at 5, quoting *Olsen*, 325 Mich App at 193. But under *Olsen*, 325 Mich App at 185, the aggrieved-party analysis refers to " 'other property owners similarly situated,' " whereas the common-law standing analysis under *Lansing Sch*, 487 Mich at 372, refers to " 'the citizenry at large.' " *Saugatuck Dunes Coastal Alliance*, unpub op at 5.

The panel echoed *Olsen*'s holding that ownership of adjacent land, entitlement to notice, " '[i]ncidental inconveniences, such as increased traffic congestion, general aesthetic and economic losses, population increases, or common environmental changes' were all deemed inadequate to establish that a party is 'aggrieved.' " *Id*. at 5, quoting *Olsen*, 325 Mich App at 185. "Ecological harms" and "[c]oncerns over potential harms are also insufficient, at least where there is some basis, such as health and building permit requirements, to conclude that the potential is unlikely to become actual." *Saugatuck Dunes Coastal Alliance*, unpub op at 5, citing *Olsen*, 325 Mich App at 186-187. The panel did not read *Olsen* to preclude "any possibility that such harms *could* result in a party being aggrieved" if it was "specifically or disproportionately" affected "in a manner meaningfully distinct from 'other property owners similarly situated.' " *Saugatuck Dunes Coastal Alliance*, unpub op at 5. But the panel concluded that appellant's arguments were

8

incorrect to the extent that they referred "to injuries that differ from 'the public at large.' "
*Id*. While recognizing that appellant submitted affidavits "apparently tending to show that the affiants will suffer harms distinct from the general public," *id*., the Court reasoned that appellant had not met the standard established by *Olsen*:

> *Plaintiff has not shown, however, that the affiants will suffer harms distinct from other property owners similarly situated*. A party generally cannot show a sufficiently unique injury from a complaint that "any member of the community might assert." *Olsen*, 325 Mich App at 193. We reiterate that we do not consider whether plaintiff might have *standing* in an appropriate procedural context. However, *some of the affiants are not even actual owners of nearby property*; and otherwise all of the articulated concerns are either speculative, broad environmental policy matters, or pertain to harms that could be suffered by any nearby neighbor, business, or tourist. Irrespective of the seriousness of those harms, or of whether those harms might differ from the citizenry at large, the trial court properly concluded that plaintiff was not an aggrieved party pursuant to MCL 125.3605, so plaintiff's appeals were correctly dismissed. See *id*. at 194. [*Saugatuck Dunes Coastal Alliance*, unpub op at 5 (emphasis added).]

However, the panel remanded Docket No. 342588 to the circuit court for plenary consideration of the original claims that appellant raised in that case.

## II. ANALYSIS

We directed the parties to address three issues. *Saugatuck Dunes Coastal Alliance v Saugatuck Twp*, 505 Mich 1056, 1056 (2020). First, whether the " 'party aggrieved' standard of MCL 125.3605 requires a party to show some special damages not common to other property owners similarly situated . . . ." *Id*. Second, whether the "meaning of 'person aggrieved' in MCL 125.3604(1) differs from that of 'party aggrieved' in MCL 125.3605, and if so what standard applies" to this case. *Id*. Third, whether the Court of Appeals erred by affirming the circuit court's dismissal of appellant's appeals. *Id*. These

9

issues turn on questions of statutory interpretation, which we review de novo. *Kyser v Kasson Twp*, 486 Mich 514, 519; 786 NW2d 543 (2010). Whether a party has standing is also a question of law that we review de novo. *Mich Ass'n of Home Builders v Troy*, 504 Mich 204, 212; 934 NW2d 713 (2019).

## A. ZONING APPEALS UNDER THE MZEA

Local governments have no inherent power to regulate land use, but the "Legislature has empowered local governments to zone for the broad purposes identified in" the MZEA at MCL 125.3201(1). *Kyser*, 486 Mich at 520. The MZEA was enacted in 2006 and consolidated three zoning statutes for cities and villages, for townships, and for counties. 2006 PA 110. In addition to setting the parameters of local zoning power, the MZEA also established processes and standards for when, how, and who can appeal official decisions related to the regulation and development of land. See MCL 125.3603 to MCL 125.3607. At issue in this matter is the standard for a party to show that it has been "aggrieved" by a decision of a planning commission or zoning board of appeals for purposes of appealing those decisions under MCL 125.3604(1) and MCL 125.3605.

Several provisions of the MZEA address the appellate process. "For special land use and planned unit development decisions, an appeal may be taken to the zoning board of appeals only if provided for in the zoning ordinance." MCL 125.3603(1).[8] When a

---

[8] When these appeals were taken, Saugatuck Township Ordinance, § 40-72 empowered the ZBA to "[h]ear and decide appeals from and review any order, requirement, decision or determination made by the Zoning Administrator or the Planning Commission . . . ." However, effective June 20, 2018, an amendment of § 40-72 removed the ZBA's authority to "hear appeals from a decision on a special approval use, planned unit development, or rezoning." We express no opinion about how this amendment might affect future proceedings in these cases.

10

zoning ordinance allows for an appeal from a planned unit development or special-land-use decision to a zoning board of appeals, MCL 125.3604(1) governs.

> *An appeal to the zoning board of appeals may be taken by a person aggrieved* or by an officer, department, board, or bureau of this state or the local unit of government. . . . The zoning board of appeals shall state the grounds of any determination made by the board. [MCL 125.3604(1) (emphasis added).]

MCL 125.3605 addresses the finality of a zoning board of appeals' decision and who can appeal such a decision in the circuit court. The statute provides: "The decision of the zoning board of appeals shall be final. *A party aggrieved by the decision may appeal to the circuit court* for the county in which the property is located as provided under [MCL 125.3606]." MCL 125.3605 (emphasis added). MCL 125.3606(1), in turn, provides:

> (1) *Any party aggrieved by a decision of the zoning board of appeals may appeal to the circuit court for the county in which the property is located.* The circuit court shall review the record and decision to ensure that the decision meets all of the following requirements:
>
> (a) Complies with the constitution and laws of the state.
>
> (b) Is based upon proper procedure.
>
> (c) Is supported by competent, material, and substantial evidence on the record.
>
> (d) Represents the reasonable exercise of discretion granted by law to the zoning board of appeals. [Emphasis added.]

### B. MEANING OF "AGGRIEVED" UNDER THE MZEA

Zoning statutes in Michigan have a long history of making the ability to appeal an administrative zoning decision contingent on establishing that one was "aggrieved" by the decision. The Legislature included this requirement in the MZEA when it repealed the City and Village Zoning Act, the Township Zoning Act, and the County Zoning Act. 2006

11

PA 110. Each of those prior laws used the term "person aggrieved" to describe who could appeal a local zoning decision.[9] Despite the prevalence of the terms "person aggrieved" and "party aggrieved" in Michigan's zoning laws for the better part of a century, our Legislature has never defined what it means to be aggrieved by a zoning decision.[10] That task now falls to this Court.

---

[9] See 1921 PA 207, § 5 ("[An] appeal may be taken by any person aggrieved or by any officer, department, board or bureau of the city or village."); 1943 PA 184, § 20 ("[An] appeal may be taken by any person aggrieved or by any officer, department, board or bureau of the township, county or state."); 1943 PA 183, § 20 ("[An] appeal may be taken by any person aggrieved or by any officer, department, board or bureau of the township, county or state."). But see 2000 PA 20, § 5(11) (providing that "a person having an interest affected by the zoning ordinance may appeal to the circuit court").

[10] Some states have defined "person aggrieved" or "party aggrieved" within their zoning statutes. See, e.g., Conn Gen Stat 8-8(a)(1) (" 'aggrieved person' includes any person owning land in this state that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board"); Fla Stat 163.3215(2) (" 'aggrieved or adversely affected party' means any person or local government that will suffer an adverse effect to an interest protected or furthered by the local government comprehensive plan . . . . The alleged adverse interest may be shared in common with other members of the community at large but must exceed in degree the general interest in community good shared by all persons"); Ind Code 36-7-4-1603(b) (establishing a four-part test for determining whether a person has been aggrieved by a zoning decision); Nev Rev Stat 278.3195(1)(d) (stating that, in a county with a specified population size, one is aggrieved if they appeared in person, through a representative, or in writing before the relevant decision-making individual or entity); RI Gen Laws 45-24-31(4) (defining "aggrieved party" as one whose "property will be injured by a decision of any officer or agency responsible for administering the zoning ordinance of a city or town" or "[a]nyone requiring notice pursuant to this chapter"); Wash Rev Code 36.70C.060 (establishing a four-part test for determining whether someone is aggrieved by a land-use decision); W Va Code 8A-1-2(b) (defining "aggrieved person" as one who was denied the relief sought in an application or appeal or one who will "suffer a peculiar injury, prejudice or inconvenience beyond that which other residents of the county or municipality may suffer"); Wis Stat 68.06 (defining "person aggrieved" as one "whose rights, duties or privileges are adversely affected by a determination of a municipal authority").

1. HISTORICAL UNDERSTANDING OF THE TERM "AGGRIEVED"

We do not approach our task with a blank slate. The meaning of "aggrieved" has been developing in the Court of Appeals for decades. Many of the seminal cases addressing the meaning of "aggrieved" under prior zoning statutes were never appealed to this Court. This is the first opportunity for us to decide this issue on the merits. In 1965, the Court of Appeals recognized a national consensus "that to have any status in court to attack the actions of a zoning board of appeals, the party must be an aggrieved party, and said party must be more than a resident of the city."[11] *Marcus v Busch*, 1 Mich App 134, 136; 134 NW2d 498 (1965), citing 58 Am Jur, Zoning, § 253 (1956); Anno: *Construction and Application of Provisions for Variations in Application of Zoning Regulations and Special Exceptions Thereto*, 168 ALR 133 (1947); 8 McQuillin, Municipal Corporations, § 25.292 (3d ed rev 1957).

A few years later, the Court of Appeals decided *Joseph v Grand Blanc Twp*, 5 Mich App 566; 147 NW2d 458 (1967). *Joseph* concerned a township resident's *original action* challenging the adoption of an ordinance that rezoned certain property within the township. *Id*. at 569-570. The plaintiff, who owned land about one mile from the rezoned property, had not alleged special damages. *Id*. The Court acknowledged that *Marcus* held that in the absence of special damages, the plaintiff could not contest the decision in court. *Id*. at

---

[11] This consensus appears to remain true, 83 Am Jur 2d, Zoning and Planning (November 2021 update), § 880, except in those jurisdictions that have adopted a more lenient standard by statute, see, e.g., Tex Loc Gov't Code Ann 211.011(a) (allowing persons aggrieved by a decision of the board of adjustment, taxpayers, and certain government officials to challenge a decision of the board in court).

13

570-571. The Court then linked its special-damages analysis to property ownership specifically:

> In order to maintain this action, *plaintiff, a nonabutting property owner, must allege and prove that he has suffered a substantial damage which is not common to other property owners similarly situated*. *Victoria Corporation* v. *Atlanta Merchandise Mart, Inc.* (1960), 101 Ga App 163 (112 SE2d 793). See comment in 64 MLR 1070, 1079. In his complaint, plaintiff claims that because of this rezoning, traffic will be increased on the dirt road fronting on his property; because of this, he will suffer economic and aesthetic losses. The record further discloses that the question of whether or not plaintiff suffered special damage was before the court for a period in excess of 5 months, during which time special damages could have been alleged.
>
> Other jurisdictions have held that a mere increase in traffic with its incidental inconvenience did not constitute a substantial damage and, therefore, the plaintiff was not considered to be an aggrieved party. The reasoning in the cases is that such increase in traffic congestion, with its attendant difficulties for property owners whose property fronts on the street, is a matter which addresses itself to the police authorities of the municipality rather than to the zoning authorities. [*Joseph*, 5 Mich App at 570-571 (citation omitted; emphasis added).]

The addition of a "property ownership" requirement for zoning appeals was not analyzed in any way in *Joseph*. While *Joseph* involved a property owner challenging a rezoning decision, there was no discussion about why property ownership was itself key to one's ability to contest a zoning decision or how that requirement could be derived from any of Michigan's zoning statutes that were then in effect. Over time, *Joseph* repeatedly has been cited for the proposition that to be "aggrieved" by a zoning decision for purposes of an appeal, a comparison to *other property owners* is required, which implicitly requires the complaining party to be a property owner. As the quotation above shows, *Joseph*'s standard came from a single Georgia Court of Appeals decision and a student-authored

14

law-review comment. Both were questionable sources of authority for Michigan law then, and they remain questionable today.[12]

The Court of Appeals then applied the *Joseph* property-owner formulation in the context of zoning appeals. The ZBA relied on *Unger*, 65 Mich App 614, in this matter. *Unger* concerned an appeal by a nearby property owner who opposed the approval of permits for a new apartment complex. *Id*. at 616. *Unger* reiterated the holding from *Joseph* that a plaintiff "must allege and prove that he has suffered some special damages not common to other property owners similarly situated," *id*. at 617, and it rejected the argument that ownership of land on the same lake as the property in question alleviated the need for special damages, *id*. at 618. Reiteration of the standard from *Joseph* continued in zoning-appeal cases for many years without question, despite *Joseph* not being based on any of Michigan's then existing zoning statutes.[13]

_____

[12] *Victoria Corp* was not an original action challenging the validity of a legislative zoning action. Rather, *Victoria Corp* interpreted the meaning of "substantial interest," a phrase used in a Georgia statute governing when a party is entitled to appeal the grant of a zoning variance. *Victoria Corp* specifically involved a complaining nearby property owner who had not participated in the administrative proceedings but filed an appeal based on concerns about potential increases in traffic congestion. *Victoria Corp*, 101 Ga App at 163-164. The cited student-authored comment, Comment, *Standing To Appeal Zoning Determinations: The "Aggrieved Person" Requirement*, 64 Mich L Rev 1070 (1966), quoted *Victoria Corp* and included a national survey of general trends in zoning law. The comment did not substantively engage with Michigan law, but it noted ambiguities and inconsistencies in how different jurisdictions addressed standing in third-party zoning appeals.

[13] See *Western Mich Univ Bd of Trustees v Brink*, 81 Mich App 99, 102-103, 105; 265 NW2d 56 (1978) (holding that receiving statutory notice and having a "financial interest in throttling the development of neighboring properties is not" sufficient for a party to be considered "aggrieved"); *Village of Franklin v Southfield*, 101 Mich App 554, 556-557; 300 NW2d 634 (1980) (holding that ownership of adjacent land or being an adjacent

The Court of Appeals in this case relied on the recent decision in *Olsen*, 325 Mich App 170. *Olsen* concerned an appeal from an original variance decision by a zoning board of appeals and addressed the "party aggrieved" standard in MCL 125.3605. *Olsen* correctly recognized that "the term 'standing' generally refers to the right of a plaintiff initially to invoke the power of a trial court to adjudicate a claimed injury." *Id*. at 180, citing *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 290; 715 NW2d 846 (2006). The Court further observed that an appeal under MCL 125.3605 is different from an original action because the former invokes a circuit court's appellate authority and requires the party to be "aggrieved" by the decision of the zoning board of appeals. *Id*. at 180-181. The *Olsen* panel also relied on the zoning decisions discussed earlier in this opinion, going back to *Joseph*. Without analyzing the procedural differences or the minimal source material relied on in *Joseph*, the Court reaffirmed *Joseph*'s primary holding. *Id*. at 185-186.

> Given the long and consistent interpretation of the phrase "aggrieved party" in Michigan zoning jurisprudence, we interpret the phrase "aggrieved party" in § 605 of the MZEA consistently with its historical meaning. Therefore, to demonstrate that one is an aggrieved party under MCL 125.3605, a party must "allege and prove that he [or she] has suffered some special damages not common to other property owners similarly situated[.]" *Unger*, 65 Mich App at 617. Incidental inconveniences such as increased traffic congestion, general aesthetic and economic losses, population

---

municipality was not enough to be considered "aggrieved" in the absence of special damages). But see *Brown v East Lansing Zoning Bd of Appeals*, 109 Mich App 688, 699-701; 331 NW2d 828 (1981) (holding that allegations that the development would "intensify the change in the character of the neighborhood as well as increase the number of its residents" were "special damages" and that appellants met the requirements under either the "interests affected" or the "aggrieved party" standards), superseded by statute as stated in *Ansell v Delta Co Planning Comm*, 332 Mich App 451, 459 (2020).

increases, or common environmental changes are insufficient to show that a party is aggrieved. See *id*.; *Joseph*, 5 Mich App at 571. Instead, there must be a unique harm, dissimilar from the effect that other similarly situated property owners may experience. See *Brink*, 81 Mich App at 103 n 1. Moreover, mere ownership of an adjoining parcel of land is insufficient to show that a party is aggrieved, *Village of Franklin*, 101 Mich App at 557-558, as is the mere entitlement to notice, *Brink*, 81 Mich App at 102-103. [*Olsen*, 325 Mich App at 185.]

*Olsen*, thus, followed the precedent of linking a person's ability to appeal a zoning decision to real-property ownership and comparison of the alleged harms to other property owners similarly situated. The *Olsen* panel went on to agree with the township that the appellees lacked standing to appeal in the circuit court. *Id*. at 193. In doing so, the panel rejected the appellees' argument that they could rely on the prudential standard for standing adopted in *Lansing Sch*, 487 Mich 349, because the appellees had appealed a zoning board of appeals' decision under the MZEA rather than commencing an original action. *Olsen*, 325 Mich App at 193.

### 2. "PARTY AGGRIEVED" UNDER MCL 125.3605

We specifically requested briefing on whether the "party aggrieved" standard in MCL 125.3605 requires a party to show some special damages not common to other property owners similarly situated. "The foremost rule, and our primary task in construing a statute, is to discern and give effect to the intent of the Legislature." *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). As discussed in Part II(B)(2)(b) of this opinion, the term "aggrieved" has become a legal term of art. This triggers several additional considerations. MCL 8.3a requires that "technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning." We have adopted a

17

similar principle at common law.  See *Prod Credit Ass'n of Lansing v Dep't of Treasury*, 404 Mich 301, 312; 273 NW2d 10 (1978).  We are also mindful that generally "[w]hen a term has received past judicial interpretation, the Legislature is presumed to have intended the same meaning." *People v Wright*, 432 Mich 84, 92; 437 NW2d 603 (1989).

Over time, the term "aggrieved" in the MZEA has become inappropriately intertwined with real-property ownership to a point where judicial decisions have begun to suggest that only real-property owners have the ability to appeal a zoning decision.  In nearly every case already discussed in this opinion, the parties seeking to appeal a zoning decision premised their right to appeal primarily or solely on their ownership of real property near or adjacent to the land subject to the challenged decision.  This context makes it unsurprising that most Court of Appeals decisions have focused on real-property ownership and the harms experienced by such property owners.  But there is no indication in the text of the MZEA that the Legislature intended to grant the right to appellate review of zoning decisions only to real-property owners.  Neither the MZEA nor any of Michigan's previous zoning statutes explicitly require one to own real property in order to be "aggrieved" by local land-use decisions or to prove "aggrieved" status by comparison to other property owners who are similarly situated.

We take this opportunity to set Michigan zoning law back on its proper trajectory.  By requiring one to be a "party aggrieved" by a zoning decision under MCL 125.3605 and MCL 125.3606, the Legislature implicitly rejected the idea that standing can be based on mere proximity to a development.  Neither MCL 125.3103 (providing for advance notice to property owners and occupants within 300 feet of a potential zoning decision) nor MCL 125.3502 (requiring advance notice of a public hearing to property owners or occupants

18

within 300 feet of property considered for special land use) is tied to any appeal rights. Similarly, the MZEA does not say that taxpayer or residency status makes one aggrieved by a zoning decision. The MZEA thus suggests that more is required to be "aggrieved."

The first part of this key phrase is easy enough to parse. To be a "party"[14] under MCL 125.3605 and 125.3606 means that the appellant must have participated in the zoning board of appeals proceedings, such as by taking a position on the contested issue in writing or through public comment.[15] It is the meaning of "aggrieved" that has led to disputes.

There is no reference to an appellant's property ownership in MCL 125.3605 or MCL 125.3606. The MZEA provides that a zoning board of appeals' decision is "final" and that "[a] *party aggrieved* by the decision may appeal to the circuit court for the county *in which the property is located*" under MCL 125.3606. MCL 125.3605 (emphasis added). Similarly, MCL 125.3606(1) states that "[a]ny *party aggrieved* by a decision of the zoning board of appeals may appeal to the circuit court *for the county in which the property is located*." (Emphasis added.) While both MCL 125.3605 and MCL 125.3606 refer to "property," in each statute the term is linked not to the appellant's property but to the real property subject to the zoning board of appeals' decision. This is unsurprising. The MZEA authorizes the adoption of local zoning ordinances to regulate land use and development to meet the needs of Michiganders. See MCL 125.3201; MCL 125.3202. Further, the powers

---

[14] See *Black's Law Dictionary* (11th ed) (defining "party" as "[s]omeone who takes part in a transaction . . . .").

[15] The ZBA was empowered to hear these appeals when they were filed. See note 8 of this opinion. Therefore, we need not address whether the "party aggrieved" standard applies in an appeal to the circuit court where there is no statute providing for an appeal to a zoning board of appeals. See MCL 125.3603(1); *Ansell*, 332 Mich App at 459.

19

of a zoning board of appeals are limited to "questions that arise in the administration of the zoning ordinance . . . ." MCL 125.3603(1). A zoning board's power is understandably linked to real-property regulation.

This makes sense because zoning ordinances affect all who reside or do business within the local jurisdiction or community regardless of whether they own real property in that location. Zoning ordinances control land use, which affects where people can live and where businesses can operate. If being aggrieved by a zoning decision under the MZEA required proof of " 'special damages *not common to other property owners similarly situated*,' " *Olsen*, 325 Mich App at 185 (emphasis added), quoting *Unger*, 65 Mich App at 617, then all renters of real property (including business owners who lease space) within a jurisdiction would be effectively excluded from appealing zoning decisions.[16] We can assume that this is no small group of hypothetical individuals or businesses.[17] It is unlikely

---

[16] Other jurisdictions have recognized that there might be circumstances in which a person or entity renting real property would have sufficient interest and potential for injury to be entitled to challenge local zoning decisions. See, e.g., *Moutinho v Planning & Zoning Comm of Bridgeport*, 278 Conn 660, 667-668; 899 A2d 26 (2006) ("It is clear . . . that a lessee may have a sufficient interest in leased property to be aggrieved by a zoning decision affecting that property."); *Sun-Brite Car Wash, Inc v Bd of Zoning & Appeals of North Hempstead*, 69 NY2d 406, 414-415; 508 NE2d 130 (1987) (explaining that "[a] leaseholder may . . . have the same standing to challenge municipal zoning action as the owner.").

[17] While local and regional figures vary, a 2019 study from the Michigan State Housing Development Authority found that 25% of housing stock in the state was renter-occupied and only 60% was owner-occupied. See Michigan State Housing Development Authority, *Michigan Homeownership Study: Understanding and Advancing Homeownership in Michigan, Companion Report: Key Trends and Measures by Prosperity Region* (March 2019), p 20, available at <https://www.michigan.gov/documents/mshda/MSHDA-Michigan-Homeownership-Study-Companion-Report_653597_7.pdf> (accessed January 5, 2022) [https://perma.cc/7WTA-QCHN].

20

that the Legislature intended to completely exclude leaseholders from those who may obtain judicial review of a zoning board of appeals' administrative decisions by mere implication.

The Legislature, in fact, has specifically required "property ownership" as a statutory criterion in other parts of the MZEA. For example, MCL 125.3103(2) requires that advance notice of a public hearing be provided to "owners of property" that is subject to a potential zoning decision and "occupants of all structures within 300 feet" of the property. Similarly, MCL 125.3502(2) entitles the "property owner or the occupant of any structure located within 300 feet of the property" being considered for a special land use to notice of public hearings on the issue and allows them to demand that a public hearing be held before a decision is made. The MZEA also allows "an interested property owner" to request a public hearing on a proposed zoning ordinance. MCL 125.3401(4). Moreover, MCL 125.3406(3) grants certain exceptions to an applicant for a zoning permit who "became the owner of the property by foreclosure or by taking a deed in lieu of foreclosure" under certain circumstances.

The Legislature omitted mention of ownership or occupancy status when describing the class of individuals or entities that are entitled to appeal a decision under MCL 125.3605 or MCL 125.3606. Instead, the Legislature used the broader phrase "party aggrieved" without mandating that the party own any property within the relevant jurisdiction or that the required harm be shown by comparison to other property owners. That choice of words establishes a class of potential appellants broader than real-property owners, with the focus being on whether the decision at issue "aggrieved" the complaining party.

21

## a. PROPERTY OWNERSHIP IS NOT REQUIRED TO APPEAL ZONING DECISIONS

As already discussed, Court of Appeals precedent incorrectly imposed an extra-statutory property-ownership limitation on the term "aggrieved" within the MZEA. While the purported requirement dates back to *Joseph*, that decision was not appealed in this Court. *Joseph* is also distinguishable because it concerned an *original action* challenging the validity of a legislative act of rezoning property as opposed to an appeal from an administrative zoning decision.[18] The *Joseph* decision imported a requirement that the alleged special damages be based on a comparison to other property owners similarly situated. The *Unger*, *Brink*, and *Village of Franklin* decisions, which also were not appealed in this Court, doubled down on *Joseph* by grafting the nonstatutory standard onto the statutory standards for seeking appellate review of administrative zoning decisions. *Olsen* then applied the same standard to MCL 125.3605 based on an assumption that the Legislature relied on what we have identified as incorrect judicial construction of prior statutes. *Olsen*, 325 Mich App at 182-185. In light of the precedent discussed below that predates *Joseph* and defines the term "aggrieved" without regard to property ownership,

---

[18] The zoning and rezoning of property are considered legislative functions under Michigan law. *Schwartz v Flint*, 426 Mich 295, 307-308; 395 NW2d 678 (1986). There is authority to suggest that " '[t]he remedy of the party who conceives himself injured by an amendment is to wait until it has been adopted and then challenge it in court' " rather than to seek an administrative appeal. *Sun Communities v Leroy Twp*, 241 Mich App 665, 669-670; 617 NW2d 42 (2000), quoting Crawford, Michigan Zoning and Planning (3d ed), § 1.11, p 53. *Sun Communities* was not appealed in this Court. We take no position on the issue decided in *Sun Communities* beyond recognizing that there is a difference between appealing the administrative application of existing zoning ordinances under the MZEA and challenging the legal validity of a municipality's legislative zoning actions.

we decline to recognize an extra-statutory property-ownership requirement merely because a mistake has been repeated over time.[19]

### b. WHAT IT MEANS TO BE AGGRIEVED BY A ZONING DECISION

We must decide the standard for determining when a potential appellant has been "aggrieved" by a zoning decision.[20] Long before *Olsen* or *Joseph* were decided, the term

---

[19] The dissent argues that the "Court of Appeals has never held that a person must be a property owner to appeal a zoning decision or that, to determine aggrieved status, the appellant must be compared to property owners" and further states that "[n]or do the cases hold that the 'similarly situated' component of the test requires comparing the appellant to property owners." Such arguments ignore the actual statements of law made by the Court of Appeals in *Olsen*, related decisions, and this case. See *Olsen*, 325 Mich App at 185; *Unger*, 65 Mich App at 617; *Brink*, 81 Mich App at 103 n 1. *Olsen* itself is internally inconsistent because it simultaneously refers to special damages as harm "not common to other property owners similarly situated," *Olsen*, 325 Mich App at 183, 184, 185, 186 (quotation marks and citation omitted), "harm different from that suffered by people in the community generally," *id*. at 183, 186, "a unique harm different from similarly situated community members," *id*. at 186, and harms "different from those of others within the community," *id*. at 194. In this case, the Court of Appeals, citing *Olsen*, noted that "[p]laintiff has *not* shown, however, that the affiants will suffer harms distinct from *other property owners similarly situated*" and that "some of the affiants are not even actual owners of nearby property[.]" *Saugatuck Dunes Coastal Alliance*, unpub op at 5, citing *Olsen*, 325 Mich App at 193. In the absence of a Court of Appeals decision regarding an aggrieved nonproperty owner, we cannot know whether zoning boards of appeal and circuit courts have been more literal in their reading of the law than what the dissent suggests the Court of Appeals has historically been. Those bodies are the bodies who primarily decide who has been "aggrieved" for purposes of MCL 125.3605 and MCL 125.3606, and it is those bodies that will most benefit from clarification of the law. Nor can we know how attorneys counsel their clients based upon the caselaw.

[20] Appellant and the Environmental Law and Policy Center ask us to effectively adopt the *Lansing Sch* prudential standard for standing as the interpretive explanation for the "aggrieved party" standard under the MZEA or, alternatively, to harmonize the two. Conversely, North Shores argues that property ownership is not a prerequisite to claiming an appeal under the MZEA and suggests that the reference to property ownership is merely

"aggrieved" had a settled meaning in Michigan outside the zoning context. Nearly 100 years ago, we stated that " '[t]he question of who may be aggrieved was settled in *Labar v. Nichols*, 23 Mich. 310 [(1871)]. To be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency.' " *George Realty Co v Paragon Refining Co of Mich*, 282 Mich 297, 301; 276 NW 455 (1937). It is not clear why the *Joseph*, *Unger*, and later decisions failed to mention this precedent when interpreting the term "aggrieved" within the context of zoning appeals.[21] More recently, in the context of establishing standing to appeal a judicial decision, we reiterated that

> standing refers to the right of a party plaintiff *initially* to invoke the power of the court to adjudicate a claimed injury in fact. In such a situation it is usually the case that the defendant, by contrast, has no injury in fact but is compelled to become a party by the plaintiff's filing of a lawsuit. In appeals, however, a similar interest is vindicated by the requirement that the party seeking appellate relief be an "aggrieved party" under MCR 7.203(A) and our case law. This Court has previously stated, "To be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency." *In re Estate of Trankla*, 321 Mich 478, 482; 32 NW2d 715 (1948), citing *In re Estate of Matt Miller*, 274 Mich 190, 194; 264 NW 338 (1936). An aggrieved party is not one who is merely disappointed over a certain result. Rather, to have

---

a mechanism for ensuring that the special-damages assessment looks at those "who share the same legally cognizable interest."

[21] The Legislature is presumed to have had knowledge of all caselaw regarding the definition of "aggrieved"—including the pre-1970s precedent from this Court concerning what it means to be aggrieved by a legal determination—when it enacted the MZEA in 2006. See 2006 PA 110. Thus, just as the Legislature is presumed to have known of *Joseph* and its progeny, it is also presumed to have known that this Court's pre-1970s precedent was inconsistent with *Joseph* and its progeny and that this Court had never adopted or endorsed the *Joseph* formulation.

standing on appeal, a litigant must have suffered a concrete and particularized injury, as would a party plaintiff initially invoking the court's power. The only difference is a litigant on appeal must demonstrate an injury arising from either the actions of the trial court or the appellate court judgment rather than an injury arising from the underlying facts of the case. [*Federated Ins Co*, 475 Mich at 290-292 (citations omitted).][22]

Additionally, *Black's Law Dictionary* defines "aggrieved" as "([o]f a person or entity) having legal rights that are adversely affected; having been harmed by an infringement of legal rights" and defines "aggrieved party" as "[a] party entitled to a remedy; esp., a party whose personal, pecuniary, or property rights have been adversely affected by another person's actions or by a court's decree or judgment." *Black's Law Dictionary* (11th ed), pp 83 and 1351.

We are tasked with now determining what it means to be aggrieved by a zoning decision. Synthesizing concepts from caselaw and *Black's Law Dictionary*, as a general matter, to be aggrieved by a legal determination, one must have a *protected interest or a protected personal, pecuniary, or property right that is or will be adversely affected* by the substance and effect of the challenged decision. Moreover, despite some disagreements with prior Court of Appeals precedent, we agree with the longstanding requirement that a party appealing under the MZEA must demonstrate special damages as a part of demonstrating aggrieved-party status. This is a derivative of the requirement that the complaining party demonstrate injury to a protected right or interest. Such a requirement is necessary to balance the rights of private-property owners seeking zoning approval and

---

[22] Even a prevailing party can be "aggrieved" by a decision for appellate purposes if the legal effects of the decision mean that the party "nonetheless suffered a concrete and particularized injury as a result . . . ." *Manuel v Gill*, 481 Mich 637, 644; 753 NW2d 48 (2008).

25

the interests of third parties seeking to ensure that local zoning ordinances are correctly and lawfully administered. Requiring an appellant to demonstrate special damages also aligns with how a majority of other jurisdictions have construed the requirement of being aggrieved in their zoning statutes.[23] This requirement also aligns with the observations offered in a leading legal encyclopedia:

> To maintain standing to challenge a zoning decision as an aggrieved person, a person must have and maintain a specific, personal, and legal interest in the subject matter of the appeal throughout the course of the appeal and must present proof of the adverse effect the changed status has or could have on the use, enjoyment, and value of his or her property. The zoning board decision must not only affect a matter in which the protestant has a specific interest or property right, but he or she must also be personally and specially affected in a way different from that of the public generally. [83 Am Jur 2d, Zoning and Planning (November 2021 update), § 882 (citations omitted).]

Based on our review of the statutes and other available authority, we hold that to be a "party aggrieved" under MCL 125.3605 and MCL 125.3606, the appellant must meet three criteria.

---

[23] See, e.g., *Virginia Beach Beautification Comm v Bd of Zoning Appeals of Virginia Beach*, 231 Va 415, 419-420; 344 SE2d 899 (1986) ("The word 'aggrieved' in a statute contemplates a substantial grievance and means a denial of some personal or property right, legal or equitable, or imposition of a burden or obligation upon the petitioner different from that suffered by the public generally."); *Safest Neighborhood Ass'n v Athens Bd of Zoning Appeals*, 2013-Ohio-5610, ¶ 26; 5 NE3d 694 (Ohio App, 2013) ("A party is directly affected by an administrative decision, as distinguished from the public at large, when he or she can demonstrate a unique harm."); *Copple v City of Lincoln*, 210 Neb 504, 507; 315 NW2d 628 (1982) ("In order to have standing as an aggrieved person for the purpose of attacking a change of zone, the plaintiff must demonstrate that he suffers a special injury different in kind from that suffered by the general public.").

- First, the appellant must have participated in the challenged proceedings by taking a position on the contested decision, such as through a letter or oral public comment.

- Second, the appellant must claim some legally protected interest or protected personal, pecuniary, or property right that is likely to be affected by the challenged decision.

- Third, the appellant must provide some evidence of special damages arising from the challenged decision in the form of an actual or likely injury to or burden on their asserted interest or right that is different in kind or more significant in degree than the effects on others in the local community.

We use "others in the local community" to refer to persons or entities in the community[24] who suffer no injury or whose injury is merely an incidental inconvenience and *exclude* those who stand to suffer damage or injury to their protected interest or real property that derogates from their reasonable use and enjoyment of it.[25] Factors that can be relevant to this final element of special damages include but are not limited to: (1) the type and scope

---

[24] The local community will often be limited to those within the jurisdictional boundaries of the body making the zoning decision. There are situations where the scope or nature of the decision—or the location of the proposed land use—will affect persons or entities in adjacent jurisdictions. In such situations, it would be appropriate to consider those individuals or entities to be part of the relevant community for purposes of analyzing whether they have standing to appeal a zoning decision.

[25] In other words, to be a party aggrieved, the appellant must show an injury different in kind or more significant in degree from others in the relevant community who suffer incidental inconvenience as a result of the contested decision. But one need not show an injury different in kind or more significant in degree from others who also stand to suffer actionable damage or injury to their real property that derogates from their reasonable use and enjoyment of it. It would not be appropriate, for example, to say that a neighbor of a proposed apartment development who can present evidence of harm to his or her protected property rights does not have standing to appeal merely because another neighbor to the same development would suffer the same or similar harm. Rather, the inquiry must go beyond adjacent neighbors and consider what harms are and are not shared by the local community as a whole to ensure a proper measurement of special damages.

of the change or activity proposed, approved, or denied; (2) the nature and importance of the protected right or interest asserted; (3) the immediacy and degree of the alleged injury or burden and its connection to the challenged decision as compared to others in the local community; and (4) if the complaining party is a real-property owner or lessee, the proximity of the property to the site of the proposed development or approval and the nature and degree of the alleged effect on that real property.[26]

We reaffirm several well-established principles that are relevant to the standing analysis. Under the current MZEA, mere ownership of real property that is adjacent to a proposed development or that is entitled to statutory notice, *without a showing of special damages*, is not enough to show that a party is aggrieved. See *Olsen*, 325 Mich App at 185; *Village of Franklin*, 101 Mich App at 557-558; *Brink*, 81 Mich App at 102-103. It also remains true that *generalized* concerns about traffic congestion, economic harms, aesthetic harms, environmental harms, and the like are not sufficient to establish that one has been aggrieved by a zoning decision. See *Olsen*, 325 Mich App at 185; *Unger*, 65 Mich App at 617. But we caution courts and zoning bodies against an overbroad construction of allegations as mere generalizations to avoid addressing the merits of an appeal. While *generalized* concerns are not sufficient, a specific change or exception to local zoning restrictions might burden certain properties or individuals' rights more heavily than others. A party who can present some evidence of such disproportionate burdens

---

[26] While we reject appellant's request to graft the prudential standard for standing to initiate a lawsuit that we adopted in *Lansing Sch* onto MCL 125.3605 and MCL 125.3606, we expect some overlap in analysis because of similarities in the legal standard.

likely will have standing to appeal under MCL 125.3605 and MCL 125.3606.[27] In light of the modest clarification to the law that this opinion makes and the breadth of existing precedent that has been retained, we disagree with the dissent's suggestion that this decision will cause confusion or "upend[] decades of stability in Michigan zoning law."

Further, unlike in an original lawsuit, a circuit court sits as an appellate body with a closed record when reviewing an appeal brought under MCL 125.3605 and MCL 125.3606. If the circuit court determines that "the record [is] inadequate to make the review required by [MCL 125.3606] or finds that additional material evidence exists that with good reason was not presented" for purposes of analyzing standing under MCL 125.3605 and MCL 125.3606, then the court "shall order further proceedings on conditions that the court considers proper." MCL 125.3606(2). These additional proceedings may include a remand to the relevant planning or zoning body whose decision is being contested with instructions as to what is expected by the circuit court.

### 3. INTERPLAY BETWEEN MCL 125.3604(1) AND MCL 125.3605

We also requested briefing as to whether there is a substantive difference between the "person aggrieved" standard in MCL 125.3604(1) and the "party aggrieved" standard

---

[27] We observe, for example, that the Court of Appeals' evaluation of the alleged special damages incurred by waterfront property owners and river-using business owners in the present matter seems at odds with another unpublished decision that was decided about a month later. See *Deer Lake Prop Owners Ass'n v Indep Charter Twp*, unpublished per curiam opinion of the Court of Appeals, issued October 10, 2019 (Docket No. 343965), p 9 (holding that a lakefront property owners' association was aggrieved by a special-land-use approval when the association alleged "that the additional docks may disrupt or destroy the shoreline and its ecosystem" because, "[a]s riparian owners who share this shoreline, [the members of the association] have an interest beyond that of other lake users, the public at large, or even similarly situated neighbors").

29

in MCL 125.3605. The task of the ZBA here was to determine whether appellant was a "person aggrieved" by the Commission's planned unit development and special use approval decisions for purposes of an appeal to the ZBA under MCL 125.3604(1). The ZBA determined that appellant was not a person aggrieved, and that decision was appealed in the circuit court under MCL 125.3605. In both lower-court proceedings, the circuit court either overlooked or failed to mention these nuances. Similarly, the Court of Appeals focused solely on whether appellant was a "party aggrieved" by the ZBA's decision for purposes of MCL 125.3605, which was the statute analyzed in *Olsen*, without any discussion of whether it was a "person aggrieved" by the Commission's decisions for purposes of MCL 125.3604(1). This was a clear error, but not one of consequence for present purposes.

Appellant meets the broad definition of "person" under MCL 125.3102(q) (" 'Person' means an individual, partnership, corporation, association, governmental entity, or other legal entity."). Thus, appellant is a "person" for purposes of MCL 125.3604(1). The parties do not dispute this. The record also shows that appellant, its members, and its representatives participated in both the Commission and the ZBA proceedings concerning the proposed North Shores development; therefore, they were "parties" under MCL 125.3605. While it is possible that an individual or entity could be a "person" under MCL 125.3604(1) but not a "party" for purposes of MCL 125.3605, that is not the situation here.

We also agree with the parties' arguments that "aggrieved" must be given the same meaning in both MCL 125.3604(1) and MCL 125.3605. The Legislature has provided no indication that "aggrieved" was intended to have different meanings in these closely related

30

statutes.[28]  See *Robinson v Lansing*, 486 Mich 1, 17; 782 NW2d 171 (2010) ("[U]nless the Legislature indicates otherwise, when it repeatedly uses the same phrase in a statute, that phrase should be given the same meaning throughout the statute.").  To determine whether the ZBA's standing decision was correct in this case, on remand the circuit court first must determine whether appellant was aggrieved by the Commission's decision for the purpose of appealing to the ZBA under MCL 125.3604.  This determination will inform the subsequent analysis of whether appellant was aggrieved by the ZBA's standing decision for the purpose of appealing in the circuit court under MCL 125.3605 and MCL 125.3606.

### III.  CONCLUSION

We overrule *Olsen*, *Joseph*, and related Court of Appeals decisions to the *limited extent* that they (1) require real-property ownership as a prerequisite to being "aggrieved" by a zoning decision under the MZEA and (2) require special damages to be shown only by comparison to other real-property owners similarly situated.  Real-property ownership is not a requirement to appeal under the MZEA, and whether someone is "aggrieved" for purposes of claiming an appeal under the MZEA should be determined using the analysis laid out in Part II(B)(2)(b) of this opinion.  It is not clear whether the lower courts would have reached the same result as to standing in the absence of the errors in existing precedent.  Accordingly, we decline to decide whether the Court of Appeals erred when it affirmed the circuit court's decisions.  Instead, we vacate Part IV of the Court of Appeals opinion, vacate the Allegan Circuit Court's judgment regarding standing, and remand both

---

[28] We acknowledge that the procedural distinctions between the two statutes might mean that the facts that make a person "aggrieved" under one statute might differ from the facts that make a party "aggrieved" under the other statute.

31

cases to the circuit court for reconsideration of appellant's arguments regarding standing under MCL 125.3604(1) and MCL 125.3605.  On remand, the circuit court shall also address appellant's original causes of action as directed by Part V of the Court of Appeals opinion and conduct such other proceedings as may be necessary or appropriate under MCL 125.3606.[29]

Elizabeth M. Welch
Bridget M. McCormack
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

---

[29] Depending on the outcome of the circuit court's analysis of standing, it might be necessary for the court to also address what effect, if any, Saugatuck Township's amendment of § 40-72 of its zoning ordinance regarding the ZBA's authority to hear appeals related to special approval use and planned unit development approval will have on future proceedings in this matter.

STATE OF MICHIGAN

SUPREME COURT

SAUGATUCK DUNES COASTAL
ALLIANCE,

      Plaintiff-Appellant,

v                                   Nos. 160358-9

SAUGATUCK TOWNSHIP,
SAUGATUCK TOWNSHIP ZONING
BOARD OF APPEALS, and NORTH
SHORES OF SAUGATUCK, LLC,

      Defendants-Appellees.

_____

VIVIANO, J. (*dissenting*).

The majority's decision today to redefine what it means to be a "party aggrieved" for purposes of the Michigan Zoning Enabling Act (the MZEA), MCL 125.3101 *et seq*., will have far-ranging and destabilizing effects on Michigan zoning law. The majority conjures new definitions, criteria, and factors—the contours of which will be litigated for years to come. In doing so, the majority abandons the interpretation of "aggrieved" that has stood for decades, including at the time the Legislature adopted the MZEA. The majority's expansive new definition of "party aggrieved" is contrary to the intent of the Legislature, confusing, and unnecessary to resolve this case. Its decision will unsettle an area of the law that has been settled and has operated well for over a century. For these reasons, I respectfully dissent.

# I. FACTS AND PROCEDURAL HISTORY

In 2017, the Saugatuck Township Planning Commission provided conditional approval and final approval for a condominium development proposed by defendant North Shores of Saugatuck, LLC (North Shores). Plaintiff, the Saugatuck Dunes Coastal Alliance, appealed those decisions to the Saugatuck Township Zoning Board of Appeals (the ZBA). Plaintiff submitted evidence in the form of written statements and testimony at the ZBA hearing that it contended gave it standing to appeal the decisions of the Planning Commission. The ZBA concluded that plaintiff lacked standing in two separate resolutions. Plaintiff appealed both resolutions in the circuit court, which affirmed both decisions of the ZBA. Plaintiff appealed both circuit court decisions in the Court of Appeals, which consolidated the cases. The Court of Appeals affirmed the circuit court's decisions but remanded one case to the circuit court for it to consider the original claims plaintiff had raised in that case. *Saugatuck Dunes Coastal Alliance v Saugatuck Twp*, unpublished per curiam opinion of the Court of Appeals, issued August 29, 2019 (Docket Nos. 342588 and 346677). Plaintiff then sought leave to appeal in this Court.

# II. LEGAL ANALYSIS

## A. "PARTY AGGRIEVED" AS USED IN MICHIGAN'S ZONING STATUTES IS A LEGAL TERM OF ART

To properly interpret "aggrieved" in the MZEA, a brief overview of the history of the appeal provisions in Michigan's various zoning statutes is necessary. Michigan did not always have a single consolidated law governing local zoning, such as the MZEA. Previously, the state had three separate zoning statutes: (1) the City and Village Zoning Act, 1921 PA 207, later codified at MCL 125.581 to MCL 125.600; (2) the County Zoning

2

Act, 1943 PA 183, later codified at MCL 125.201 to MCL 125.240; and (3) the Township Zoning Act, 1943 PA 184, later codified at MCL 125.271 to MCL 125.310.

The City and Village Zoning Act used the term "person aggrieved" when providing for appeals to the ZBA, former MCL 125.585(a), as enacted by 1921 PA 207, and used the term "party aggrieved" when allowing appeals of certain ZBA decisions in the circuit court, former MCL 125.590, as added by 1947 PA 272. But in 1979, the Legislature specifically added a provision allowing for appeals of all ZBA decisions in the circuit court by "a person having an interest affected by the zoning ordinance . . . ." Former MCL 125.585(6), as added by 1978 PA 638. The County Zoning Act used the same "person aggrieved" language for appeals to the ZBA, former MCL 125.220(2), and the "person having an interest affected" language for appeals of a ZBA decision in the circuit court, former MCL 125.223(2). The Township Zoning Act mirrored the County Zoning Act. Former MCL 125.290; former MCL 125.293. Thus, beginning in 1979, all appeals from a ZBA in the circuit court used the "person having an interest affected" standard, regardless of whether the jurisdiction at issue was a city, village, township, or county.

A host of cases before and after the 1979 amendments examined the "aggrieved" person or party standard. One case addressed zoning appeals and aggrieved-party status without looking to the statutes. In *Marcus v Busch*, 1 Mich App 134, 136; 134 NW2d 498 (1965), the Court of Appeals observed that "[t]he consensus of authority throughout the country is that to have any status in court to attack the actions of a zoning board of appeals, the party must be an aggrieved party, and said party must be more than a resident of the city." Rather than determining whether the plaintiffs were aggrieved parties, the Court of Appeals remanded the case to the circuit court to make that determination. *Id*.

3

Two years later, the Court of Appeals in *Joseph v Grand Blanc Twp*, 5 Mich App 566, 570-571; 147 NW2d 458 (1967), relied on *Marcus* and other caselaw for the proposition that "[i]n order to maintain this action, plaintiff, a nonabutting property owner, must allege and prove that he has suffered a substantial damage which is not common to other property owners similarly situated." The Court determined that the plaintiff, who was merely a resident of the township, was not an "aggrieved party" because he had not alleged any special damages "different in kind from those suffered by the community . . . ." *Id*. at 571. This caselaw was cited in *Unger v Forest Home Twp*, 65 Mich App 614, 617-618; 237 NW2d 582 (1975), to reject the appellant's challenge of the issuance of a building permit for a condominium complex: while he claimed to own real property that bordered the land in question, he had not shown any special damages. For that reason, his allegations were insufficient to establish standing. *Id*. at 618. The Court of Appeals also rejected the appellant's argument that the township's zoning ordinance gave standing to any township property owner, noting that the ordinance was in conflict with MCL 125.293. *Id*. Significantly, despite referring to MCL 125.293, the Court of Appeals never addressed that MCL 125.293 contained the phrase "person having an interest affected" instead of "aggrieved" party or person.

In *Western Mich Univ Bd of Trustees v Brink*, 81 Mich App 99; 265 NW2d 56 (1978), the Court of Appeals addressed an appeal of a ZBA decision in the circuit court under the City and Village Zoning Act. The Kalamazoo Zoning Board of Appeals had granted the defendant's petition to expand a nonconforming use. *Id*. at 100. The plaintiff had wanted to purchase Brink's property. *Id*. at 104. Unlike the three cases discussed above, the Court in this case did look to the zoning statute to determine who may appeal a

4

ZBA decision in the circuit court, noting that MCL 125.590 limited "the right to institute a suit for review of the [ZBA's] decision to parties thereby 'aggrieved[.]' " *Brink*, 81 Mich App at 101. The Court of Appeals observed that the "aggrieved party" "requirement has repeatedly been recognized and applied in the decisions of this Court." *Id*. at 102, citing *Unger*, 65 Mich App 614, *Joseph*, 5 Mich App 566, and *Marcus*, 1 Mich App 134. The Court quoted *Unger* for the proposition that the "aggrieved" standard requires a plaintiff-appellant to " 'allege and prove that he has suffered some special damages not common to other property owners similarly situated . . . .' " *Brink*, 81 Mich App at 104, quoting *Unger*, 65 Mich App at 617. The plaintiff had only alleged that it would have to pay a higher price to purchase the land it wanted to purchase and made a general allegation about the construction causing it irreparable harm. *Brink*, 81 Mich App at 104. The Court of Appeals affirmed the trial court's holding that the plaintiff had not been aggrieved. *Id*. at 105.

Similarly, in *Village of Franklin v Southfield*, 101 Mich App 554, 556-558; 300 NW2d 634 (1980), the Court of Appeals applied the "party aggrieved" language from MCL 125.590 and relied on *Unger*, *Joseph*, and *Brink* to interpret the standard. The plaintiffs challenged approval of a proposed residential and commercial development. *Id*. at 556. The Court of Appeals held that the plaintiffs lacked standing, noting that they had not proven special damages and were therefore not "aggrieved." *Id*. at 558.

The following year, in *Brown v East Lansing Zoning Bd of Appeals*, 109 Mich App 688, 699; 311 NW2d 828 (1981), the Court of Appeals applied the "person having an interest affected" standard after recognizing that it was a less-stringent standard than the "party aggrieved" standard. See also *Olsen v Chikaming Twp*, 325 Mich App 170, 189;

5

924 NW2d 889 (2018) (noting that *Brown* involved the more-permissive "person having an interest affected" standard). In *Brown*, the Court of Appeals determined that "active opposition" to a variance and participation in ZBA hearings was sufficient to demonstrate that an individual has an "interest affected" by a decision to grant a variance. *Brown*, 109 Mich App at 699, quoting MCL 125.585(6). Under the "person having an interest affected" standard, there was no requirement that the appellant suffer any damages at all by the decision, let alone "special damages."

In 2006, the Legislature repealed the separate zoning acts and adopted the MZEA. MCL 125.3604 addresses appeals to the ZBA and states, in relevant part, that "[a]n appeal to the zoning board of appeals may be taken by a person aggrieved or by an officer, department, board, or bureau of this state or the local unit of government." MCL 125.3604(1). MCL 125.3605 addresses appeals from a ZBA to the circuit court and states: "The decision of the zoning board of appeals shall be final. A party aggrieved by the decision may appeal to the circuit court for the county in which the property is located as provided under section 606." Thus, the Legislature abandoned the "person having an interest affected" standard that had been in the original Township Zoning Act and County Zoning Act and the amended City and Village Zoning Act; instead, the Legislature adopted a "party aggrieved" standard similar to that in the original City and Village Zoning Act for appeals to circuit court from ZBA decisions pertaining to nonconforming uses.[1]

---

[1] As the majority notes, in a subsequent case, the Court of Appeals recognized that its decision in *Brown* applying the "person having an interest affected" standard was superseded by statute when the Legislature repealed the City and Village Zoning Act. See *Ansell v Delta Co Planning Comm*, 332 Mich App 451, 459; 957 NW2d 47 (2020).

The Court of Appeals properly recognized the Legislature's adoption of the "party aggrieved" standard in *Olsen*, 325 Mich App 170, in which the Court sought to interpret the phrase "party aggrieved" in MCL 125.3605. The Court of Appeals understood that the proper framing of the issue under the MZEA is not one of "standing," as that word is traditionally used, but whether the appellees were "parties aggrieved by the decision" of the ZBA as defined by the MZEA. *Id*. at 181. The Court recognized the presumption that the Legislature uses "words in the sense in which they previously have been interpreted," *id*. at 182, and looked to *Unger*, *Joseph*, *Village of Franklin*, and *Brink* for how the panels in those cases had defined "party aggrieved," *id*. at 182-185. The Court then explained:

> Given the long and consistent interpretation of the phrase "aggrieved party" in Michigan zoning jurisprudence, we interpret the phrase "aggrieved party" in § 605 of the MZEA consistently with its historical meaning. Therefore, to demonstrate that one is an aggrieved party under MCL 125.3605, a party must "allege and prove that he [or she] has suffered some special damages not common to other property owners similarly situated[.]" *Unger*, 65 Mich App at 617. Incidental inconveniences such as increased traffic congestion, general aesthetic and economic losses, population increases, or common environmental changes are insufficient to show that a party is aggrieved. See *id*.; *Joseph*, 5 Mich App at 571. Instead, there must be a unique harm, dissimilar from the effect that other similarly situated property owners may experience. See *Brink*, 81 Mich App at 103 n 1. Moreover, mere ownership of an adjoining parcel of land is insufficient to show that a party is aggrieved, *Village of Franklin*, 101 Mich App at 557-558, as is the mere entitlement to notice, *Brink*, 81 Mich App at 102-103. [*Olsen*, 325 Mich App at 185 (alterations in original).]

Applying the principles from cases that had interpreted the phrase "aggrieved party" to the facts at issue, the Court concluded that the appellees had failed to show that they were aggrieved parties for purposes of the MZEA. *Olsen*, 325 Mich App at 186. The appellees had alleged that "they would suffer aesthetic, ecological, practical, and other

7

alleged harms from the grant of the zoning variance," but the Court held that these alleged harms did not show " 'special damages not common to other property owners similarly situated[.]' " *Id.* (alteration in original), quoting *Unger*, 65 Mich App at 617. The Court of Appeals specifically distinguished *Brown*, finding it "unpersuasive" on the ground that the "interest affected by the zoning ordinance" standard was "a more permissive threshold" than the "aggrieved person" threshold the MZEA incorporated. *Olsen*, 325 Mich App at 189. The panel concluded:

> [W]e reiterate that the inquiry here involves not an application of concepts of standing generally, but a specific assessment of whether, under the MZEA, appellees have established their status as aggrieved parties empowered to challenge a final decision of the ZBA. We conclude that appellees are not parties "aggrieved" under MCL 125.3605, having failed to demonstrate special damages different from those of others within the community. [*Olsen*, 325 Mich App at 194.]

Just as in *Olsen*, the Court of Appeals in this case correctly understood that whether a party has standing is a distinct inquiry from whether a party is "aggrieved" for purposes of the MZEA.[2] And because there has been "long and consistent interpretation of the

---

[2] A number of plaintiff's members participated in the ZBA hearings and submitted affidavits, but only plaintiff was a named appellant in the court proceedings. Neither party has addressed the specific test for determining when an association representing its members is aggrieved for purposes of the MZEA. The Court of Appeals looked at whether any of plaintiff's members were aggrieved for purposes of determining whether plaintiff, as an association, was aggrieved. The point at which an association representing its members qualifies as "aggrieved" under the MZEA is an issue that has not received significant attention from our appellate courts, and I have found no Michigan caselaw directly addressing whether the standard is different for an association than it is for an individual. But the Court of Appeals' approach in this case is consistent with the majority approach, which looks at whether one or more of an association's members would qualify as "aggrieved" for purposes of determining whether the association is aggrieved. See 4 Salkin, American Law of Zoning (5th ed, May 2022 update), § 42:14. Because the parties

8

phrase 'party aggrieved' in Michigan zoning jurisprudence," *Olsen*, 325 Mich App at 185, it was not only proper, but necessary, for the Court of Appeals to consider that caselaw in determining whether plaintiff was a "party aggrieved" under MCL 125.3605.

## B. THE COURT OF APPEALS CORRECTLY INTERPRETED "PARTY AGGRIEVED"

In light of this history, the first problem with the majority opinion is readily apparent: it goes to great lengths to rid Michigan caselaw of a rule that has never existed. The Court of Appeals has never held that a person must be a property owner to appeal a zoning decision or that, to determine aggrieved status, the appellant must be compared to property owners. Indeed, had the Court of Appeals made such an assertion, it would have been dicta, since none of the appellants in those cases was a nonproperty owner. Rather, in the cases discussed above, the Court of Appeals merely recognized that the parties challenging the ZBA decisions were, in fact, property owners. Therefore, those cases stand for the proposition that when a party challenging a ZBA decision is a property owner, the comparison is to other similarly situated property owners.[3] Nothing in *Joseph* or its progeny ever held that a nonproperty owner may not be a "party aggrieved."

Nor do the cases hold that the "similarly situated" component of the test requires comparing the appellant to property owners. That is, although the Court of Appeals asked in those cases whether the appellant had suffered injuries different from those experienced

---

have not briefed this issue and because the Court of Appeals reached the correct result, there is no need to resolve the issue today.

[3] It makes sense that because property owners are often the most intimately affected by zoning decisions, they are frequently the litigants who challenge those decisions.

9

by similarly situated property owners, this was again because the appellants in those cases were property owners. The very nature of a "similarly situated" test entails comparing the appellant to individuals or entities who are, in fact, similarly situated (not just to property owners). The Court of Appeals caselaw appears to recognize this. In *Olsen*, 325 Mich App at 186, for example, the Court determined that the parties were not aggrieved because they "failed to show that they suffered a unique harm different from similarly situated *community members* . . . ." (Emphasis added.) Even *Joseph*, 5 Mich App at 571, concluded by noting that any damages alleged by the plaintiff were not "different in kind from those suffered by the community . . . ."[4] As a result, at the time the Legislature enacted the MZEA, it would not have understood "party aggrieved" to be limited to property owners or to require comparisons to the harms suffered by similarly situated property owners.

Second, and more importantly, even if the majority is correct that *Joseph* and the cases that relied on it incorrectly defined "aggrieved" for purposes of zoning law, our role in this case is not to determine whether "aggrieved" was properly understood in those cases but to determine what the Legislature meant when it used the term "party aggrieved" in the MZEA. For zoning in townships, the Legislature made the conscious choice to change

---

[4] See also *Ansell*, 332 Mich App at 460 ("Such concerns, however, do not show that appellants stand to suffer any greater negative impacts from the proposals than do their *neighbors or others in the community*.") (emphasis added). North Shores cites a host of unpublished opinions that illustrate this same point. See, e.g., *Deer Lake Prop Owners Ass'n v Independence Charter Twp*, unpublished per curiam opinion of the Court of Appeals, issued October 10, 2019 (Docket No. 343965), p 9 (comparing the injuries of the party property owners to those of "other lake users, the public at large, [and] even similarly situated neighbors").

10

from a standard that looked at whether one has "an interest affected" and to return to a standard that looked at whether one is "aggrieved." Significantly, the Legislature had previously used an "aggrieved" standard in the state's zoning laws. "[C]ourts must pay particular attention to statutory amendments, because a change in statutory language is presumed to reflect either a legislative change in the meaning of the statute itself or a desire to clarify the correct interpretation of the original statute." *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009); see also Scalia & Garner: *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 73 (" '[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it.' "), quoting Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum L Rev 527, 537 (1947).

The Legislature's use of old legislation to craft new legislation is not an uncommon occurrence and can aid courts in the proper interpretation of new or revised legislation.

> Most statutes have had many precursors because legislatures avoid the sudden, sporadic, and unexpected enactment of unprecedented legislation. A particular act usually expands or restricts the regulation of former acts, but seldom breaks with the principle of regulation expressed by its predecessors. . . .
>
> Thus, a full appreciation of any specific enactment requires an examination of all legislation in a particular field. . . . Such an inquiry will usually reveal a legislative common law of surprising consistency and continuity, may help disclose the "legislative intent" behind a particular statute, and also can pave the way for constructive judicial use of legislative as well as case law precedents. [2A Singer & Singer, Sutherland Statutory Construction (7th ed, November 2021 update), § 45:10 (citations omitted).]

11

Absent any evidence that the Legislature thought those cases had been wrongly decided when it adopted the MZEA, the word "aggrieved" in MCL 125.3604(1) and MCL 125.3605 should be understood consistently with those cases.

Thus, the question at issue is not whether *Joseph* and its progeny were correct; the question is what the Legislature intended when it chose to use the phrase "party aggrieved" in MCL 125.3605. At the time the Legislature adopted the MZEA, our courts had uniformly construed the word "aggrieved" in the context of zoning law for nearly 40 years. See *Reading Law*, p 322 ("If a statute uses words or phrases that have already received authoritative construction by the jurisdiction's court of last resort, or even uniform construction by inferior courts . . . , they are to be understood according to that construction."). The statutory history of the MZEA and the acts that it replaced demonstrate that the Legislature intended to return to a narrower "aggrieved" standard in place of the relaxed "interest affected" standard that it had adopted in 1979. Notably, this "aggrieved" standard was different from the "person having an interest affected" standard that had been used in all three zoning statutes prior to their replacement. See *Olsen*, 325 Mich App at 189.

In 2006, the phrase "party aggrieved" had acquired a particular meaning within zoning law—that given to it in *Joseph*, *Unger*, *Brink*, and *Village of Franklin*: when an individual challenges a ZBA decision, a party aggrieved was one who suffered some special damages not common to other similarly situated community members. As noted, because "party aggrieved" had received past judicial interpretation, it is presumed that the Legislature intended "party aggrieved" to have the same meaning given to it in prior zoning

12

caselaw.  See *People v Wright*, 432 Mich 84, 92; 437 NW2d 603 (1989).[5]  Absent any evidence to the contrary, the presumption that the Legislature intended "party aggrieved" to have the meaning consistently given to it by Michigan courts should stand.  Regardless of whether it was originally proper to define "party aggrieved" to require a party to show that he or she "suffered some special damages not common to other property owners similarly situated," *Unger*, 65 Mich App at 617, that requirement would have been part of the Legislature's understanding of the phrase "party aggrieved" when it enacted the MZEA.

## C.  THE MAJORITY'S STANDARD WILL UNSETTLE AN AREA OF THE LAW THAT HAS BEEN SETTLED FOR DECADES

The majority, in rejecting the proper interpretation of the statute, adopts one that is troublesome in both its development and effects.  In establishing the three new "party aggrieved" criteria, the majority appears to have spliced together bits and pieces from a number of other authorities.  How exactly the majority arrived at these three criteria is not entirely clear.  The majority discusses a number of cases—some pertaining to zoning law and others not—and statutes from other jurisdictions, but it does not cite specific authority for establishing the three criteria in our state.  And the factors the majority announces for

---

[5] Although the majority is correct that the Legislature is presumed to have had knowledge of all caselaw involving the definition of "aggrieved," only caselaw defining "aggrieved" in the zoning context is relevant to determining the Legislature's intent when enacting the MZEA.  When a phrase has received uniform construction by our courts, the phrase acquires a technical legal sense *specific to that field of law*.  See *Reading Law*, p 324 ("The word or phrase at issue is a statutory term used in a particular field of law (to which the statute at issue belongs).  When that term has been . . . given uniform interpretation by the lower courts . . . , the members of the bar practicing in that field reasonably enough assume that, in statutes pertaining to that field, the term bears this same meaning.  The term has acquired, in other words, a technical legal sense . . . that should be given effect in the construction of later-enacted statutes.").

13

determining whether special damages exist, which appear to have been created out of whole cloth, are not discussed anywhere else in the majority's opinion. Thus, when courts have questions about how the criteria and factors should be applied, they will be left wondering where to look for further explanation.

Beyond the confusion created by the majority's method in establishing the criteria, the criteria themselves are problematic in a number of ways. First, the majority does away with the requirement that the harm suffered must be different from the harm suffered by those who are similarly situated. The "similarly situated" requirement ensures that only those who suffer damages different from those damages suffered by the community in general may appeal a zoning decision. See Boerner, *Standing to Appeal Zoning Determinations: The "Aggrieved Person" Requirement*, 64 Mich L Rev 1070, 1079-1080 (1966); *Miller v Fulton Co*, 258 Ga 882, 883; 375 SE2d 864 (1989).[6] This Court's opinion in *Spiek v Dep't of Transp*, 456 Mich 331, 349; 572 NW2d 201 (1998), addressing an inverse-condemnation suit, demonstrates why such a requirement is necessary:

> Where harm is shared in common by many members of the public, the appropriate remedy lies with the legislative branch and the regulatory bodies created thereby, which participate extensively in the regulation of vibrations, pollution, noise, etc., associated with the operation of motor vehicles on public highways. Only where the harm is peculiar or unique in this context does the judicial remedy become appropriate.

The same principle applies to zoning decisions appealed to and from a ZBA. If the basis for the appeal is that the underlying zoning ordinance is allowing for harm shared by many

_____

[6] *Joseph*, 5 Mich App at 570-571, had relied on Georgia caselaw when it recognized the "similarly situated" requirement, so it is helpful to look at Georgia caselaw to explain that requirement.

community members, the appropriate remedy is to have those community members urge the legislative body of the municipality to change the zoning ordinance. In any event, it seems inescapable that one person's special damages will likely be different in kind or more significant in degree than at least one other person's when the comparison is to everyone else in the community. Thus, by changing the relevant comparison to "others in the local community" instead of those who are "similarly situated," the majority's standard significantly broadens who can qualify as "aggrieved."

Second, the majority's expansion of what constitutes "special damages" also has the potential to dramatically expand who qualifies as "aggrieved." *Joseph* required the special damages to be "different in kind from those suffered by the community . . . ." *Joseph*, 5 Mich App at 571. The majority's third factor expands this, making one aggrieved if the special damages are "different in kind or more significant in *degree* than the effects on others in the local community." (Emphasis added.) It will almost always be possible to find "others in the local community" who have not suffered the same kind of damages or who have suffered them to a lesser degree. This hollows out the special-damages requirement and disregards its origins. The special-damages requirement comes from public-nuisance law. See 4 Rathkopf, The Law of Zoning and Planning (4th ed, June 2022 update), § 63:14. In Michigan, to bring an action to abate a public nuisance, one has to show " 'damage of a special character, distinct and different from the injury suffered by the public generally.' " *Morse v Liquor Control Comm*, 319 Mich 52, 59; 29 NW2d 316 (1947), quoting 39 Am Jur, p 378, overruled in part on other grounds by *Bundo v Walled Lake*, 395 Mich 679, 691-692 (1976). *Joseph*'s focus on the kind of harm, rather than the

15

degree of harm, is consistent with the development of the special-damages requirement in public-nuisance law.

The majority's unsupported and unexplained addition of "degree" of harm to the inquiry is likely to have significant effects on zoning law in Michigan. Burdens and injuries to interests or rights will typically be more significant for those who are closer to the property for which a zoning decision was made. The degree of harm will typically continue to decrease for those farther and farther from the property at issue. Thus, the majority's standard will likely give "aggrieved" status to all but the most remote individual or entity who is least harmed by a zoning decision—as long as they will actually or likely suffer an injury.

The practical effect of the majority's new standard is that the threshold for who qualifies as "aggrieved" will be significantly more permissive. The majority ignores the Legislature's decision to abandon a "more permissive" standard for a narrower one and in the process upends decades of stability in Michigan zoning law.[7]

### III. CONCLUSION

To appeal the decision of the ZBA, plaintiff needed to show that its members would suffer some harms that were different from harms suffered by similarly situated community members. The Court of Appeals was correct in determining that plaintiff had not made such a showing. The harms alleged were either common to other similarly situated

---

[7] Although the majority does not fully resurrect the "interest affected" standard, its use of the phrase "legally protected interest" in its second factor is, at a minimum, puzzling given the Legislature's express choice to abandon the "interest affected" standard.

16

community members or were not damages as a result of the decision of the Planning Commission or the ZBA. Therefore, I would affirm the judgment of the Court of Appeals.

David F. Viviano
Brian K. Zahra